DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants Laura B. and Patrick B., parents of Rhyan and Jordyn B. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellants set forth the following assignments of error:
 {¶ 3} "I. The trial court erred in finding that the Lucas County Children Services Board had made a reasonable effort to reunify the minor children with appellants.
 {¶ 4} "II. The trial court erred in granting Lucas County Children Services Board's motion for permanent custody as it was against the manifest weight of the evidence to grant it."
 {¶ 5} The undisputed facts relevant to the issues raised on appeal are as follows. On August 22, 2003, appellee Lucas County Children Services ("LCCS") filed a complaint in dependency and neglect and a motion for shelter care as to Rhyan, then fifteen months old, and Jordyn, almost four months old. A shelter care hearing was held that same day. In the complaint, the agency alleged the following: a history of domestic violence between appellants; a history of alcohol abuse by father; father assaulted mother when she was pregnant and when the children were present in the home; in July 2003 mother obtained a civil protection order against father but informed the agency she wanted it dropped so father could return to the home; mother lost custody of one child in Michigan due to neglect; and mother voluntarily relinquished custody of another child to his grandparents.
 {¶ 6} At the conclusion of the hearing, the magistrate granted temporary custody of both children to LCCS for placement in shelter care. On September 30, 2003, an adjudication and disposition hearing was held. Both parents were present and consented to a finding of dependency and neglect as to both children. Temporary custody was awarded to LCCS and a case plan was approved. The case plan called for both parents to attend individual and group domestic violence counseling, parenting classes and anger management counseling. In addition, both parents were to undergo drug assessments.
 {¶ 7} On August 10, 2004, the agency filed a motion for permanent custody of Rhyan and Jordyn B. In the motion, the agency again alleged incidents of domestic violence between appellants and stated that mother was unable to protect herself and the children because she did not see the need to stay away from father. The agency also alleged father had not made any progress with services offered him, did not visit the children, did not maintain contact with his caseworker and continued to be violent toward mother. The agency further alleged mother had failed to fully comply with her case plan; had attended some services for domestic violence but had gained little insight or protection skills; continued to have contact with father despite the civil protection order; was pregnant with father's baby; did not visit her children regularly and had not followed recommendations to enter a shelter. The agency alleged that, although in March 2004, father physically abused mother and burned down her house, they continued to live together.
 {¶ 8} A permanent custody hearing began on November 29, 2004. LCCS presented the testimony of appellants' caseworker, Ramona Echols, who had worked with the family since August 2003. Echols summarized the case plan services, which included individual and group domestic violence counseling, parenting classes, anger management, and drug assessments. She testified that mother completed domestic violence counseling for victims and anger management classes. Mother also underwent drug assessment, and based on her self-report, was not recommended for any services. Echols further testified that mother had been living in various hotels or motels, and with in-laws in Toledo and Alpena, Michigan. She stated she had tried to get mother into a battered women's shelter in Toledo because mother was moving around a lot and was staying with father's relatives.
 {¶ 9} Echols testified that father initially participated in domestic violence and anger management counseling but stopped due to his work schedule. Father completed drug assessment and was referred to treatment but did not comply and was terminated from the program. Shortly before the hearing, Echols learned that father had engaged in domestic violence treatment but told him he should be involved in offender's treatment rather than the program he was attending. Father also initiated drug treatment at that time. Echols became aware that the parents were still having contact in August 2003, despite the civil protection order and testified that they continued to have contact throughout the pendency of the case. Mother denied having contact with father, but in March 2004, father told Echols they had been living together since the onset of the case. Father also told Echols he and mother were attempting to have another baby and that he would not let Echols break up their marriage and family. Mother reported to Echols that she was living in various locations, including with father's relatives, and that father was harassing her and assaulted her in April 2004. In April 2004, mother reported to Echols that she was pregnant with appellant father's child. In June 2004, mother reported that she would be moving to Alpena, Michigan. In October 2004, mother gave birth to a baby in Monroe, Michigan, and Monroe County took custody of the child. The state asked the trial court to take judicial notice of the findings of fact in the adjudicatory phase of this case which indicated that mother lost custody of one other child in Michigan due to neglect and voluntarily gave custody of another child to his paternal grandparents.
 {¶ 10} Echols stated her concerns for any children appellants would have in their custody due to father's violent nature and admitted abuse of alcohol, as well as mother's inability to protect herself or her children and lack of insight as to those issues. She further testified that mother has missed approximately one-half of her possible 125 visits with her children since the agency gained custody. Father did not begin visiting regularly until August 2004.
 {¶ 11} Mother testified on her own behalf and denied livingwith father since the initiation of this case. She stated that she was currently living in Alpena, Michigan, and traveling to Toledo for visitations and services. When in Toledo, she lived with her parents-in-law. She testified that she considers father her friend and he gives her rides to visitation when she is in Toledo. Mother also testified she completed the services required by her case plan and she obtained a civil protection order against father, which was still current. Mother further testified she has given birth to four children in addition to Rhyan and Jordyn. She voluntarily surrendered custody of one child when she was 14 years old and lost custody of another when she was 17. She testified that another child, whose age is not clear from the record, lives with her in Alpena. Her sixth child, born in October 2004, was currently in the custody of protective services in Monroe County, Michigan.
 {¶ 12} LCCS presented the testimony of Echols' supervisor, Yvette Mohammed, on rebuttal. She testified mother was in compliance with her case plan services but not with the behavioral changes expected as part of her participation in those services.
 {¶ 13} By judgment entry filed January 12, 2005, the trial court found there was clear and convincing evidence to support an award of permanent custody of Rhyan and Jordyn to Lucas County Children Services. Appellants appeal from that judgment.
 {¶ 14} As their first assignment of error, appellants assert the trial court erred by finding that LCCS made a reasonable effort to reunify them with their children. However, appellants offer no support for this argument, instead presenting other arguments, as they do under their second assignment of error, that the trial court's judgment was not supported by the evidence and not in the children's best interest. As to appellants' first claim, we find the record reflects reasonable case planning and diligent efforts on the part of LCCS to reunify the parents and their children. The record shows that in September 2003, the agency developed a case plan designed to help mother and father deal with the issues of domestic violence, anger management, alcohol abuse and lack of parenting skills. The caseworker assigned to the family attempted regular contact with both parents but was hampered by mother's frequent changes of residence and father's failure to visit the children regularly and remain in contact with the agency. Caseworker Echols repeatedly attempted to impress upon mother the importance of not only completing services but putting to use the skills she learned. Based on the foregoing, we find that LCCS made reasonable efforts to reunify appellants with their children and, accordingly, appellants' first assignment of error is not well-taken.
 {¶ 15} In their second assignment of error, appellants assert the trial court's judgment is not supported by clear and convincing evidence. Appellants argue in support that they were in the process of remedying the problems which initially caused the removal of the children from their home. Appellants also argue the award of permanent custody to LCCS was not in the children's best interest.
 {¶ 16} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C.2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs (1)-(5) of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 17} This court has thoroughly reviewed the record of proceedings in this case, from the motion for shelter care through the hearing on the motion for permanent custody and the trial court's decision. The trial court found, pursuant to R.C.2151.414(B)(1)(a), that it was in the children's best interest to grant permanent custody to LCCS and that the children could not be placed with either parent within a reasonable time or should not be placed with their parents. The trial court further found, pursuant to R.C. 2151.414(E)(1), that appellants had failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. The trial court found that father had not engaged in the services required by his case plan or corrected the conditions that would have made it possible for him to have custody of his children within a reasonable time. As to mother, the trial court found that, while she had engaged in some services, a thread of "continuing chaos" had run through her life for many years, as evidenced by the removal of several other children from her custody and her unstable housing situation over the years. The trial court also noted the birth of another child to appellants several weeks before trial and the decision of authorities in Michigan to move for immediate permanent custody of that child.
 {¶ 18} Appellants argue they were in the process of "substantially, if not totally" completing the requirements of their case plan. Mother asserts she was actively engaged in improving her situation, was gainfully employed and had appropriate housing. However, there is no evidence in the record of current employment or a permanent housing situation. In fact, at the time of trial, it was unclear whether she planned to live in Alpena, Michigan, or Toledo. She also admitted frequently seeing appellant father, against the advice of her caseworker, and in fact gave birth to his child several weeks before trial.
 {¶ 19} As expressed at the final hearing, the agency was concerned about mother's unchanged behavior even after she had participated in services. One of the requirements of mother's case plan was that she terminate her contact with father. Rather than do that, she continued to see him and became pregnant with his child during the pendency of the case. Father obtained a substance abuse assessment but never followed up with the recommended treatment. Very late in the case he attended a few sessions of anger management counseling. The original case plan provided for the parents to visit with their children three times a week but for a period of eight months, father did not visit his children, despite living in the same community. As of June 2004, mother had missed 40 percent of her possible visits with the children.
 {¶ 20} In summary, the trial court in this case found that despite appellants' participation in some services, they failed to remedy the problems that initially caused removal of their children from the home. After considering all of the foregoing, the trial court properly concluded that an award of permanent custody to LCCS would be the best assurance of permanency for the children and would be in their best interest. Based on our review of the record, we find that the trial court's decision was supported by clear and convincing evidence and that an award of permanent custody to LCCS was in the children's best interest. Accordingly, appellants' second assignment of error is not well-taken.
 {¶ 21} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal for which sum judgment is rendered against them on behalf of Lucas County and for which execution is awarded. See App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Parish, J., concur.